IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 AUG 26 PM 3: 40

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN MEMPHIS

| | | |
|---|---|---|
| TERRY J. JOHNSON and wife DOROTHY JOHNSON | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 05-2015 DP |
| THE CITY OF DYERSBURG, Chief of Police Bob Williamson; Officer Chris Clements; Owner, Homestead Ace Hardware; Bobby Sellers, Agent of Homestead Ace Hardware; Mark Gwyn, Director of Tennessee Bureau of Investigation, Information Systems Division, TBI Instant Check System (TICS), | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING DEFENDANT MARK GWYN'S MOTION TO DISMISS

Before the Court is the motion (dkt. # 7) of Defendant Mark Gwyn ("Gwyn" or "Defendant")

to dismiss. Defendant asserts that Plaintiffs Terry and Dorothy Johnson ("Plaintiffs") have not stated

a claim upon which relief can be granted.[1]  For the following reasons, the Court GRANTS

Defendant's motion to dismiss.

## I.    FACTUAL BACKGROUND[2]

On January 3, 2004, Plaintiffs went to Defendant Homestead Ace Hardware ("Homestead")

---

[1]Plaintiffs did not respond to the instant motion. Therefore, it will be decided on the existing record.

[2]The factual allegations are taken from Plaintiffs' complaint and are presumed to be true for purposes of the instant motion only.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

in Dyersburg to purchase a firearm. They filled out the paperwork and were told to return on January 10, 2004, after the Tennessee Bureau of Investigation ("TBI") performed the necessary check. Defendant was the Director of the TBI. On January 10, 2004, Plaintiffs returned to Homestead. They waited a considerable amount of time to receive the firearm. Two Dyersburg police officers entered Homestead. Officer Clements placed his hands on his holster and instructed Plaintiff Terry Johnson ("Johnson") to take his hands from his pockets. Johnson alleges that he was "grabbed and yanked" by the officer and was then placed in handcuffs. Officer Clement explained that Johnson was wanted for violating parole in Washington state. Johnson explained that he had never been to Washington. Johnson complained that the handcuffs were too tight, but the officers did not loosen them.

When they arrived at the police station, Johnson requested permission to make a telephone call but was told he must first be booked and processed. Johnson was then told that it was actually New York City, not Washington, where he was wanted. Johnson stated that he had never been to New York.

He was then handcuffed a second time and taken to City Hall to be fingerprinted once more, this time at his request. Again he complained that the handcuffs were too tight and were cutting off the circulation to his hands. He complained of excruciating pain.

After five and a half hours in jail, Johnson was released on his own recognizance. He appeared in court the following Monday and the charges were dismissed. However, Johnson asserts that the records have not been expunged. Johnson alleges that he has suffered emotional distress, physical illness, and injuries to his hands and arms.

On January 7, 2005, Plaintiffs filed a complaint with this Court. On April 29, 2005,

2

Defendant filed the instant motion to dismiss.

## II. LEGAL STANDARD

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6). This motion only tests whether the plaintiff has pleaded a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Nietzke, 490 U.S. at 326-27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; Westlake, 537 F.2d at 858. The plaintiff, however, has an obligation to allege the essential material facts of the case. Scheid, 859 F.2d at 436-37.

In reviewing the complaint, the court must accept as true all factual allegations in the

3

complaint and construe them in the light most favorable to the plaintiff. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. Nietzke, 490 U.S. at 327; Murphy v. Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. Lewis, 135 F.3d at 405-06.

## III. ANALYSIS

### A. Official Capacity

Defendant asserts that claims against him in his official capacity are barred by the Eleventh Amendment to the United States Constitution.

Generally, the Eleventh Amendment precludes citizens from bringing suit against their own[3] or other states in the federal court system. See Allinder v. Ohio, 808 F.2d 1180, 1184 (6th Cir. 1987) (citing Edelman v. Jordan, 415 U.S. 651 (1974); Employees v. Dept. of Pub. Health and Welfare of Missouri, 411 U.S. 279 (1973)). Courts and commentators suggest that the Eleventh Amendment actually curbs federal judicial power under Article III by repealing one of its affirmative grants. See Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996); Children's Healthcare Is A Legal Duty, Inc. v. Deters, 92 F.3d 1412 (6th Cir. 1996); see also William A. Fletcher, A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather Than a Prohibition Against Jurisdiction, 35 Stan. L. Rev. 1033 (1983) [hereinafter, Fletcher, A

---

[3]See Hans v. Louisiana, 134 U.S. 1 (1890) (stating that there is no distinction between citizens and non-citizens).

4

Narrow Construction].

"[T]he Eleventh Amendment . . . stand[s] not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact [and] that the judicial authority in Article III is limited by this sovereignty. . . ." Couer d'Alene Tribe v. Idaho, 42 F.3d 1244 (9th Cir. 1994) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991)).

There are, however, exceptions to sovereign immunity, whether asserted under the Eleventh Amendment or under the common law. Probably the most important exception is found in Ex parte Young, 209 U.S. 123 (1908). The Young principle allows federal courts to circumvent Eleventh Amendment immunity when the complainant alleges that state officers took actions which are clearly *ultra vires*. See id. More precisely, the Supreme Court held:

> The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten or are about to commence proceedings, either of a civil or criminal nature, to enforce against the parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

Young, 209 U.S. at 155-56.

Courts have not read Young expansively. Children's Healthcare, 92 F.3d at 1415 (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984); Edelman, 415 U.S. at 666-67; Kelley v. Metropolitan County Bd. of Educ., 836 F.2d 986, 990-91 (6th Cir. 1987), cert. denied, 487 U.S. 1206 (1988)). Young does not apply when the defendant state official has neither enforced nor threatened to enforce an allegedly unconstitutional state statute or policy. Children's Healthcare, 92 F.3d at 1415-16 ("General authority to enforce the laws of the state is not sufficient to make

government officials proper parties to litigation challenging the law") (quoting Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108, 113 (3rd Cir. 1993)). In the complaint, Plaintiffs make no allegation that Defendant has either enforced or threatened to enforce any unconstitutional statutes against Plaintiffs.

Eleventh Amendment immunity may be abrogated by Congress's express authority, under § 5 of the Fourteenth Amendment, "to enforce, by appropriate legislation, the provisions of this article." Seminole Tribe, 517 U.S. at 59 (quoting U.S. Const. Amend. XIV). Following the Supreme Court's decision in Seminole Tribe, the Fourteenth Amendment represents the only Constitutional provision enabling Congress to abrogate Eleventh Amendment immunity. Id. at 1128 (overruling Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989)).

In the instant case, Plaintiffs allege claims under 42 U.S.C. § 1983, a statute promulgated pursuant to § 5 of the Fourteenth Amendment. Thus, the question before the Court is whether Congress intended § 1983 to reach the states. Because a state is not a "person" under § 1983, the state itself cannot be held liable for violations thereof. See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Courts have consistently held that § 1983 does not represent an abrogation of a state's Eleventh Amendment immunity. In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court explained:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in Quern. . . . [T]he principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims. . . .

6

Congress did not provide such a federal forum for civil rights claims against States.
. . .

Will, 491 U.S. at 66 (citing Quern v. Jordan, 440 U.S. 332 (1979)).

Whether state officers come within the ambit of § 1983 has been the subject of considerable debate and opinion. See, e.g., Kentucky v. Graham, 473 U.S. 159 (1985); Pennhurst, 465 U.S. at 102. Generally, public officials named as defendants in their official capacities, are considered to be acting in the interests of, and on behalf of, the state, and thus they are shielded by the Eleventh Amendment. Graham, 473 U.S. at 165-66; Pennhurst, 465 U.S. at 101-102. When public officials are named as defendants in their official capacities, "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Pennhurst, 465 U.S. at 101 n.11 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)).

The Supreme Court made clear in Will, that state officers cannot be sued in their official capacity for damages under 42 U.S.C. § 1983, explaining that monetary damage suits against state officers in their official capacities are actually monetary damage suits against the offices themselves, and consequently, against the sovereign states. Id. at 71.

In the instant case, the Court concludes that, pursuant to the Eleventh Amendment, it is without subject matter jurisdiction over Plaintiffs' claims against Gwyn in his official capacity, inasmuch as they assert monetary liability against the State of Tennessee. Accordingly, Defendant's motion to dismiss Plaintiffs' claims against him in his official capacity is granted.

7

B. Individual Capacity

Defendant contends that claims against him in his individual capacity should be dismissed because there are no allegations of his personal involvement in the alleged unconstitutional activity. Plaintiffs contend that Defendant violated their constitutional rights when TBI provided misinformation to Homestead, which ultimately led to Johnson's arrest.

Title 42 of the United States Code, Section 1983 states in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. There is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) (liability under § 1983 in a defendant's personal capacity must be predicated upon some showing of direct, active participation in the alleged misconduct). It is clear from the face of the complaint that Plaintiffs rely entirely on the supervisory and management position held by Defendant as the sole basis for any claim that Gwyn violated Plaintiffs' rights. Thus, Plaintiffs have not stated a claim against Gwyn in his individual capacity. Accordingly, Defendant's motion to dismiss Plaintiffs' claims against him in his individual capacity is granted.

C. State Law Claims

Defendant avers that he is immune from all state law claims that Plaintiffs asserts against him. He contends that sovereign immunity prevents state claims against him in his official capacity. Section 20-13-102 of the Tennessee Code Annotated states that

8

> (a) No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

Tenn. Code Ann. § 20-13-102(a).  The Tennessee Claims Commission has been endowed by the Tennessee State Legislature with exclusive jurisdiction to determine all monetary claims against the State.  Lattimer v. Tennessee Dept. of Correction, 2002 WL 598558 at *3 (Tenn.Ct.App., 2002). Thus, this Court does not have jurisdiction over state claims for monetary damages against a state employee.  Gwyn is an officer of the State of Tennessee and was acting by authority of the State at all times pertinent to this lawsuit.  Any state claims against him in his official capacity which seek monetary damages from the State would be prohibited and must be dismissed.

Defendant also argues that state claims against him in his individual capacity are barred by absolute immunity.  Section 9-8-307 of the Tennessee Code Annotated states in pertinent part that "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. §9-8-307(h). The statute specifies that "state officer or "employee" is defined in T.C.A. § 8-42-101(3), which states that a state employee is "any person who is a state official . . . or any person who is employed in the service of and whose compensation is payable by the state. . . ." Tenn. Code Ann. § 8-42-101-3(A).  Thus, any claims against a state employee for acts within the scope of his employment are seen as claims against the State.  See Cavnar v. State, 2003 WL 535915 at *3 (Tenn.Ct.App. 2003). However, the State does not accept liability "for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain.  Within its general

9

preserve of sovereign immunity, the State has not consented to be liable for its employees' wrongful intentional acts." Id. (internal citations omitted).  Therefore, any claims against Defendant for acts that were willful, malicious, criminal, or for personal gain would not be protected by sovereign immunity and would be actionable against the Defendant in his individual capacity.  However, Plaintiffs do not assert any such claims against Gwyn.  Any allegations against Defendant are based on actions that fell within the scope of Gwyn's employment and would, at most, constitute negligence, not willfulness, maliciousness, criminal, or for Defendant's own personal gain.  Thus, Defendant is protected by absolute immunity.  Therefore, the Court lacks jurisdiction over the state claims against Defendant in his individual capacity.

Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' state law claims against Defendant.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's motion to dismiss all claims against Defendant Mark Gwyn in both his official and individual capacity.

IT IS SO ORDERED this 26th day of August, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

10

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 28 in case 2:05-CV-02015 was distributed by fax, mail, or direct printing on September 6, 2005 to the parties listed.

---

Lisa Ann Overall
MCDONALD KUHN
119 South Main St.
Ste. 400
Memphis, TN 38103

Loys A. Jordan
MCDONALD KUHN
119 South Main St.
Ste. 400
Memphis, TN 38103

Dawn Jordan
ATTORNEY GENERAL'S OFFICE
P.O. Box 20207
Nashville, TN 37202

William L. Johnson
LAW OFFICE OF WILLIAM L. JOHNSON
212 Adams Ave.
Memphis, TN 38103

Michael R. Hill
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Milton Dale Conder
RAINEY KIZER REVIERE & BELL
209 E. Main St
P.O. Box 1147
Jackson, TN 38302--114

Fred Collins
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

John D. Burleson
RAINEY KIZER REVIERE & BELL
105 S. Highland Avenue
Jackson, TN 38302--114

Honorable Bernice Donald
US DISTRICT COURT